IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| BARBARA GROTE | § | |
| as the Independent Executrix of the | § | |
| ESTATE OF ANTHONY BRENT WEST | § | |
| | § | |
| | § | CASE NO. 9:09CV192 |
| v. | § | |
| | § | |
| ANGELINA COUNTY | § | |

<u>MEMORANDUM OPINION</u>

Plaintiff, Barbara Grote, on behalf of her deceased son, Anthony Brent West, filed this lawsuit against Defendant, Angelina County ("County"), for violations of his civil rights under 42 U.S.C. § 1983. Before this Court is Defendant's Motion for Summary Judgment ("Motion)(doc. #45). For the reasons stated below, the undersigned finds for the Defendant.

*Factual and Procedural Background*

This lawsuit arises from West's incarceration in the Angelina County Jail. West was a chronic alcoholic. According to Grote's deposition, "[West's] alcoholism prevented him from eating properly, caused him to have seizures, and caused him to 'go crazy' during periods of withdraws." On May 30, 2008, he was sentenced to 90 days in the Angelina County Jail for outstanding warrants for driving while intoxicated and for resisting arrest. During book-in, the jail staff observed that West appeared to be in good physical condition. However, West had a seizure in the book-in area. He fell out of his chair and hit his head, which resulted in a cut to his forehead. West was transported to Memorial Hospital in Lufkin, Texas. The hospital treated West for seizures, stitched the cut on his forehead, and treated him for alcohol withdrawal. The hospital discharged West on May 31, 2008, and West was taken back to jail.

The County asserts that West's alcohol withdrawal caused him to fall frequently in his cell, become disoriented, and grow physically aggressive toward detention officers. On June 1, 2008, West charged the door of his cell and attempted to escape when the cell door opened. He resisted officers' attempts to subdue him. Once subdued, West was placed in a "restraint chair" for observation. The Angelina County Jail nurse, Julie Kay, visited and provided West with medical treatment. During her visits, she observed West falling on several occasions, shaking badly, and picking at the stitches sustained during his seizure. On June 4, 2008, the County released West to the hospital where he was admitted and treated for alcohol withdrawal. West was released from the hospital on June 9, 2008.

Grote alleges West was beaten on multiple occasions while restrained and deprived of food, water, and access to a restroom during his confinement at jail. Grote further alleges that the County's deputies harassed West after his release from the hospital, threatened to arrest him without good cause, drove past his house, and followed cars in which he was a passenger. West was found dead in a drainage ditch on May 18, 2009. According to Grote, his death was apparently caused by a hit-and-run accident.

Grote filed this lawsuit asserting the following three violations against the County: (1) The County's employees acted deliberately and with intent to injure West, or at least acted recklessly with conscious indifference to the rights of West in violation of 42 U.S.C. § 1983; (2) The County's supervisory personnel deprived West of his due process and equal protection rights under the Fourteenth Amendment of the United States Constitution; and (3)West was deprived of basic human needs, was subjected to excessive and unnecessary force, and was deprived of serious medical needs in violations of his Eight Amendment. In addition to actual damages, pre- and post-judgment interest, attorneys' fees, and court costs, Grote seeks exemplary and punitive damages in the amount

of $2,500,000.00.

On January 7, 2011, the County filed the current Motion. The County contends that West's constitutional rights were not violated. On the contrary, the County officers never mistreated West, and West himself had stated he was not beaten or abused in jail. Approximately one week after West's release from the hospital, West reported to the Angelina County Health District to have his stitches removed. Nurse Kay testified during her deposition that while removing the stitches, she mentioned to West that his mother had accused the County officers of beating him. Nurse Kay testified that West denied that he had been beaten by "shaking his head and saying, 'I know they didn't.'" Nurse Kay further testified that West stated he "hoped that he hadn't caused . . . [them] very much grief, you know, by his actions at jail."

The County asserts that Grote's allegations are based entirely on speculation. Specifically, Grote was not in jail, she did not observe any beatings, and she has not produced any sworn testimony of any person who allegedly observed the beatings. West was not deprived of a minimal measure of life's necessities and his medical needs were not treated with deliberate indifference. The evidence showed that West was given water and sports drinks throughout his stay in jail to help combat his alcohol withdrawal. West was taken immediately to the hospital when he had a seizure during book-in. Nurse Kay treated West in his cell on several occasions. He was administered medication and was regularly checked on by the jail staff. With regard to allegations of harassment, the County contends the allegations are unsubstantiated. However, even if true, the alleged harassment does not rise to the level of constitutional violation because verbal harassment is not sufficient to support a § 1983 claim. The County contends it does not have a policy, custom, or practice of treating the rights or serious medical needs of any person with deliberate indifference,

of harassing citizens, and/or failing to supervise its employees. The County asserts municipality immunity from liability for punitive damages under § 1983.

On January 25, 2011, Grote filed her Response (doc. #48). She states that West was subjected to unreasonable force, and she attached pictures taken of West after being admitted to the hospital on June 4, 2008. The pictures showed multiple lacerations and bruises on his body. She states that West was either strapped in a "restraint chair" or was placed in a padded cell with no furniture nor other instruments suggesting that he could not have injured himself. Grote attached to her Response affidavits of West's ex-wife, Kim Summers, and his foster brother, Kevin Capps. Both testified that West had stated to them that while he was in jail, "[West] was strapped in a chair, a hood was placed over his head and he was beaten." The affidavits further assert that the police had harassed West. Grote alleges that West's serious medical needs were met with deliberate indifference by the officers. Specifically, West was prescribed Librium after his seizure on May 31, 2008, but the prescription was not filled. Additionally, West was not given any medication for his alcohol withdrawal. Grote alleges that West developed full-blown delirium tremens, a serious and fatal condition. The County was aware of the seriousness of West's medical condition but chose to ignore it. Furthermore, Grote alleges that the County ignored the discharge instructions to return West to the hospital if he began to experience symptoms of alcohol withdrawal and that they did not contact Nurse Kay even though she was on call. The County ignored the pleas of Grote and only gave West medical help when Grote threatened suit. Thus, Grote concludes that these facts show clear violations of West's Constitutional rights and summary judgment should be denied.

On January 31, 2011, the County filed its Objection (doc. #49) to Grote's Response. The County contends that Grote's Response was untimely. According to the Court's Amended

Scheduling Order (doc. #22), the Response was due on January 21, 2011, but Grote did not file her Response until January 25, 2011. Such untimely response should be stricken and be treated as if no response was filed. The County's summary judgment evidence should accordingly be treated as undisputed. Moreover, Grote's summary judgment evidence is inadmissible for numerous reasons and should be stricken. First, Grote violated Federal Rule of Civil Procedure 26 when she failed to disclose the substance of Kim Summers' and Kevin Capps' testimony. According to Federal Rule of Civil Procedure 37(c), if a party's failure to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial. FED.R.CIV.P. 37(c)(1). The County contends that Grote only disclosed that Summers and Capps had information concerning harassment of West by the County's sheriff's deputies; however, their affidavits now contain claims that West told them about the beating while in jail. The statements are inadmissible hearsay and, the delay in disclosing this evidence is "overwhelmingly prejudicial" to the County. Second, Grote's attached affidavits to her Response contain conclusory, self-serving statements which do not suffice to carry her summary judgment burden. For instance, Grote purports that she can recognize the bruising patterns supposedly left by a Tazer gun and bruising caused by physical alterations. Grote has not been designated as an expert on forensic bruising analysis, and her opinion testimony is pure speculation. West's purported statements to Summers and Capps regarding his being beaten in jail are likewise hearsay for which no hearsay exceptions apply. Finally, Grote has not provided summary judgment evidence to show the County has a policy, custom, or practice of treating the rights of any person with deliberate indifference and has not provided argument on the issues of harassment claims or punitive damages.

On February 21, 2011, the County filed a Supplement to its Motion for Summary Judgment (doc. #52). In the Supplement, the County attached its Requests for Admissions to Grote on November 3, 2010 via facsimile and via email. According to Federal Rule of Civil Procedure 36, Grote has 30 days after service to answer, otherwise, the matter in the Requests for Admissions is deemed admitted. FED.R.CIV.P. 36(a)(3). On March 2, 2011, Grote responded to the "Supplement" arguing that the County did not seek leave to file the "Supplement." On the same day, Grote filed her Motion to Leave to File Responses to Requests for Admissions and to Undeem the Deemed Admissions not Timely Answered (doc. #60).

*Discussion and Analysis*

## I. Requests for Admissions

The County argues that Grote's failure to timely respond to Requests for Admissions results in automatic admission of the matters contained therein pursuant to Federal Rule of Civil Procedure 36(a)(3). The County contends that Grote never responded to Requests for Admissions propounded by the County and that the matters should be deemed admitted. Such deemed admissions establish that the County did not violate any of West's constitutional rights. Thus, no genuine dispute of material fact remains and summary judgment is proper.

Rule 36 provides that a party may serve any other party written requests for admission of the truth of any matters within the scope of Rule 26(b). FED.R.CIV.P. 36(a). The matter is deemed admitted unless the party to whom the request is directed serves the requesting party a written answer or objection within thirty days after the service of the request. *Id*. Moreover, "[a]ny matter admitted . . . is conclusively established unless the court on motion permits withdrawal or amendment of the admission." FED.R.CIV.P. 36(b). Subject to Rule 16(e), the court may permit withdrawal or

amendment if it would promote the presentation of the merits of this action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits." *Id.* Although the court has considerable discretion to permit withdrawal or amendment, a deemed admission may only be withdrawn when the moving party satisfies the conditions set forth in Rule 36(b). *American Auto. Ass'n v. AAA Legal Clinic of Jefferson Crooke, P.C.*, 930 F.2d 1117, 1119 (5th Cir. 1991); *Carney,* 258 F.3d at 419. Under Rule 36(b), "the court may permit withdrawal or amendment when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice that party in maintaining the action or defense on the merits." Fed. R. Civ. P. 36(b). And, even when Rule 36(b)'s two-factor test has been satisfied, the district court "still has discretion to deny a request to withdraw or amend an admission." *Carney*, 258 F.3d at 419.

On March 7, 2011, the Court held a Status Conference hearing. At the Status Conference hearing, the Court found Grote's failure to answer Requests for Admissions were unjustified. However, the Court did not award summary judgment to the County based on Rule 36(a)(3). Summary judgment, however, is reached in favor of the County based on the merits of the case for the reasons discussed below.

## II. Summary Judgment Standard

Rule 56(c) of the Fed. R. Civ. P. provides that the court shall grant summary judgment if the movant shows that there is no genuine dispute[1] as to any material fact and the movant is entitled to

---

[1]As amended December 1, 2010. Per the Advisory Committee Notes on 2010 amendments, Rule 56 is revised to improve the procedures for presenting and deciding summary-judgment motions and to make the procedures more consistent with those already used in many courts. The standard for granting summary judgment remains unchanged. The language of subdivision (a) continues to require that there be no genuine dispute as to any material fact and that the movant be entitled to judgment as a matter of law. The amendments will not affect continuing development of the decisional law construing and applying these phrases.

judgment as a matter of law. The party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp v. Catrett*, 477 U.S. 317, 325 (1986). The moving party, however, "need not negate the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc). The movant's burden is only to point out the absence of evidence supporting the nonmoving party's case. *Stults v. Conco, Inc.*, 76 F.3d 651, 655 (5th Cir. 1996). Once the moving party makes a properly supported motion for summary judgment, the nonmoving party must look beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial. *Id.* Neither "conclusory allegations" nor "unsubstantiated assertions" will satisfy the nonmovant's burden. *Id.*

Summary judgment is inappropriate if the evidence before the court, viewed as a whole, could lead to different factual findings and conclusions. *Honore v. Douglas*, 833 F.2d 565 (5th Cir. 1987). The district court must look to the full record, including the pleadings, affidavits, and depositions. *Williams v. Adams*, 836 F.2d 958, 961 (5th Cir. 1988). Under this standard, fact questions are considered with deference to the nonmovant. *Reid v. State Farm Mutual Automobile Insurance Co.*, 784 F.2d 577, 578 (5th Cir.1986). The evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in her favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986). The court resolves factual controversies for purposes of summary judgment in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. *Little v. Liquid Air Corp.*, 37 F.3d at 1075. The court

does not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. *Wallace v. Texas Tech University*, 80 F.3d 1042, 1048 (5th Cir. 1996) (citing *Little v. Liquid Air Corp*, 37 F.3d at 1075).

"The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 247-248. An issue is "genuine" if the evidence supporting its resolution in favor of the party opposing summary judgment, together with any inference in such party's favor that the evidence allows, would be sufficient to support a verdict in favor of the party. *St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987). A "material fact" is one that might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby*, 477 U.S. at 248. "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587 (1986) (footnote omitted).

## III. Municipal Liability

When a plaintiff seeks to establish municipal liability, the plaintiff must demonstrate that "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Bustos v. Martini Club*, 599 F.3d 458, 467 (5th Cir. 2010). An official policy is "a policy statement, ordinance, regulation or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority. Alternatively, an official policy is a persistent, widespread

practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Sanders-Burns v. City of Plano*, 594 F.3d 366 (5th Cir. 2010). A policy or custom is official only "when it results from the decision or acquiescence of the municipal officer or body with 'final policymaking authority' over the subject matter of the offending policy." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989). A plaintiff must show the policy was promulgated by the municipality's policymaker. There is no "de facto" final policymaking authority. *See Gros v. City of Grand Prairie, Tex.*, 181 F.3d 613, 616 n.2 (5th Cir. 1999) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 131 (1988)). Finally, a plaintiff must establish that the policy was the moving force behind the violation. In other words, a plaintiff must show direct causation. *See Piotrowski v. City of Houston*, 237 F.3d 580 (5th Cir. 2001). This means there must be a "direct causal link between the municipal action and the deprivation of federal rights." *Hinojosa v. Butler*, 547 F.3d 285, 296 (5th Cir. 2008). Thus, the County cannot be held liable under § 1983 unless there is an underlying constitutional violation. Accordingly, the Court first addresses whether Grote has shown an underlying constitutional violation.

## A. Eighth Amendment

The Eighth Amendment prohibits cruel and unusual punishment and imposes duties on prison officials to take reasonable measures to guarantee the safety of inmates. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citations omitted). While the original aim of the Eighth Amendment was to proscribe inhumane techniques of punishment, the Supreme Court "has extended it to encompass 'broad and idealistic concepts of dignity, civilized standards, humanity, and decency.'" *Victoria W. v. Larpenter*, 369 F.3d 475 (5th Cir. 2004) (citing *Estelle v. Gamble*, 429 U.S. 97, 102 (1976)).

Grote asserts that West's rights under the Eight Amendment were violated as a result of the County's deliberate indifference to West's serious medical needs, beatings occurring during his incarceration, and denial of basic human needs of food and water.

## 1. Serious Medical Needs

Deliberate indifference to a prisoner's serious medical needs constitutes cruel and unusual punishment under the Eighth Amendment and gives rise to a civil rights cause of action under 42 U.S.C. § 1983. *Estelle* at 104. An inmate must satisfy two requirements to demonstrate that a jail official has violated his constitutional rights in the provision of medical care. First, the deprivation alleged must be, objectively, "sufficiently serious"; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Thus, Grote must show deliberate indifference on the part of the officers to West's "serious medical needs" to satisfy this prong. *Wilson v. Seiter*, 501 U.S. 294, 297 (1991); *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993). Second, Grote must establish that the jail official possessed a culpable state of mind. *Wilson*, 501 U.S. at 298. A jail official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and the official must also draw the inference." *Id.* at 837. "Mere negligence or a failure to act reasonably is not enough. The jail official must have the subjective intent to cause harm." *Mace v. City of Palestine*, 333 F.3d 621, 626 (5th Cir. 2003). If the court finds that one of the components of the test is not met, it need not address the other components. *Davis v. Scott*, 157 F.3d 1003, 1005 (5th Cir. 1998).

*a. The Medical Condition Viewed Objectively is "Sufficiently Serious"*

Delirium tremens is a serious medical condition. *Colle v. Brazons County, Texas,* 981 F.2d 237 (5th Cir. 1993). West suffered from delirium tremens (DTs) caused by alcohol withdrawal. According to Grote, West developed "severe shakiness, confusion and hallucinations." On Nurse Kay's first visit, she observed that West was "off his gait . . . fell several times . . . fell up against the wall . . . fell on the floor." West was unable to walk and unable to carry on a "coherent conversation." In view of this evidence, it is clear that viewed objectively, West had a serious medical need.

*b. Jail Official Subjective Knowledge of the Serious Medical Need*

The Supreme Court in *Farmer* indicated the standard for deliberate indifference is not an objective one. That is, "it is not acting or failing to act in the face of an unjustifiably high risk of harm that is known or is so obvious that it should be known-rather, the standard is whether the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). The test to be satisfied is a subjective one that requires consciousness of that risk. *Id*. at 838-40. The subjective component of a deliberate indifference claim must be analyzed according to each officer individually without imputing the knowledge of fellow officers.

Grote infers that the jail officials knew of West's serious medical needs in the following ways. According to Grote, West called her on the phone from booking. First, Grote inquired about his alcohol withdrawal and asked West whether he told the jail about it. Grote stated that West assured Grote he had told the officer of his physical problems resulting from alcohol withdrawal.

Second, West experienced seizures and was taken to the hospital where he was treated for seizures and alcohol withdrawal. He was discharged back to jail with the instructions that West should be returned to the hospital immediately if he develops severe shakiness, confusion, or hallucinations. Third, Grote claims that the jailers were aware of West conditions because of his symptoms and behavior at the jail. Specifically, West was "hallucinating, incoherent, and shaking."

In this case, Grote has not named any individual defendants. Rather, her suit is against the County only. The record before the Court does not support the inference that any of the individual officers recklessly disregarded an appreciated risk to West's medical needs. For this reason, Grote has not met the subjective element requirements under *Farmer* because she cannot show that any jail official had a "sufficiently culpable state of mind." Even viewing the evidence in the light most favorable to Grote, she fails to show that the officers were deliberately indifferent to West's medical needs.

### c. No Deliberate Indifference on the Part of the Jail Officials

Grote complains that West was prescribed Librium for his alcohol withdrawal, but no one bothered to fill the prescription. Additionally, the discharge instructions recommended that the patient be returned to the hospital immediately if he developed severe shakiness, confusion, or hallucinations. Grote alleges that West experienced all of those symptoms, but he was not returned to the hospital. Grote further alleges that West was "no longer able to walk by himself, was incoherent, pale and shaking and yet for the next 24 hours Angelina County Jail did nothing. . . [except] . . . give him over-the-counter Benadryl."

In this case, summary judgment evidence shows that West's medical needs were not met with deliberate indifference. West was given immediate assistance as soon as he had the seizure while

in the booking area. A video surveillance recording dated May 31, 2008, showed that West had his seizure at approximately 8:12 a.m. An officer immediately attended to West. Officer Kristina Arthur testified that she applied pressure to West's head. Throughout the event, at least five officers attended to West and four officers remained with West until the emergency medical personnel arrived. The EMS arrived at approximately 8:19 a.m., and West was taken to the hospital at approximately 8:26 a.m. The hospital treated West for seizures, stitched the cut on his forehead, and treated him for alcohol withdrawal. West was discharged from the hospital and returned to jail on May 31, 2008.

The evidence does not establish that the jail officials or Nurse Kay possessed an attitude of deliberate indifference toward West's medical needs. The records show that the jail official dutifully checked on West, brought him his medication, food, and water, and moved him to an individual cell for monitoring. West was visited by Nurse Kay on several occasions. On Sunday, June 1, 2008, West attempted to escape. He was combative and uncooperative when officers attempted to subdue and handcuff him. The officers placed West in a "restraint chair." The records show West was checked on dutifully throughout the day.

Because West was incarcerated during the Memorial Day weekend, Nurse Kay did not visit West until Tuesday, June 3, 2008. Nurse Kay noted on her first visit that West "fell in cell, has some bruising and laceration to head." She "cleaned [the] wound [and] bandaged [it]." According to Grote's deposition, she came to visit West on June 3, 2008 and left a note for the nurse regarding West's "adverse reaction to Librium." Nurse Kay spoke to a Mr. Clark about West's allergy to the prescribed drug Librium. As a result, West was given Benadryl for his shakes and withdrawal. Nurse Kay testified that she visited West in his cell "probably five or six times" from June 3, 2008

to the morning of June 4, 2008. On June 4, 2008, she met with Sheriff Henson and Captain Marshall. It was determined that West should be sent to the Emergency Room for "evaluation and possible hospitalization." She noted that "I/M fell out of the cell, he had taken bandage off his head wound and was picking and scratching it." She further noted that "[i]t was decided to let ER evaluate injury and possibly re-stitch."

There is no record as to when West began to display signs of "severe shakiness, confusion or hallucinations" as alleged by Grote. Grote first visited West on June 3, 2008. By this time, it is undisputed that West was exhibiting "severe shakiness." But by then, West was already seen by Nurse Kay. She was treating and monitoring West. On the same visit, Grote stated she told Officer Mullins that her son needed immediate medical attention. By the next day, West was sent to the Emergency Room for "evaluation and possible hospitalization." Even assuming that West had exhibited the symptoms of "severe shakiness, confusion or hallucinations," on the day of his discharge from the hospital, the failure to immediately call Nurse Kay might be regarded as negligence, but not reckless disregard for West's serious medical condition. In hindsight, it might have been advisable to call Nurse Kay immediately for advice. However, "mere negligence or a failure to act reasonably is not enough." *Mace v. City of Palestine*, 333 F.3d 621, 626 (5th Cir. 2003). Accordingly, the Court finds that the County has not shown deliberate indifference to West's medical needs in violation of West's Eight Amendment rights.

## 2. Excessive Use of Force

The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment prohibited by the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). Whenever jail officials stand accused of using excessive physical force in violation of the Cruel and Unusual

Punishment Clause, the core judicial inquiry is . . . "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id*. at 7. In determining whether an Eighth Amendment excessive force claim has been established, courts are to consider: (1) the need for the application of force; (2) the relationship between the need and the amount of force used; (3) the threat reasonably perceived by the responsible officials; (4) any efforts made to temper the severity of a forceful response; and (5) the extent of the injury suffered. *Id*. In applying the *Hudson* factors, courts must remember "that prison officials 'may have had to act quickly and decisively.'" *Baldwin v. Stalder*, 137 F.3d 836, 840 (5th Cir. 1998) (citation omitted). Moreover, "[t]he amount of force that is constitutionally permissible . . . must be judged by the context in which that force is deployed." *Id*. (citation omitted).

Grote alleges that West was "restrained in a chair, with a hood placed over his head, and was beaten on multiple occasions with no way of defending himself." When Grote first visited her son, she stated it was "apparent he had been beaten." Grote included in her Response pictures taken of West after being admitted to the hospital showing multiple lacerations and bruises on his body. Grote stated that the pictures showed "four little round bruises on [West's] side, consistent with a fist and another bruise on his ribs is in a square consistent with a Taser." Grote does not believe that the bruises and cuts were self-inflicted stating that "I do not understand how [West] could have caused some of the injuries given the fact that for most of the time he was incarcerated he was either in a restraining chair [or] in a padded room without furniture." She concluded that "West had been brutally beaten." Furthermore, Grote alleges that West had told his ex-wife, Kim Summers, and foster brother, Kevin Capps, that while he was in jail, he was strapped in a chair with a hood placed over his head, and he was beaten.

Grote alleges that excessive force was used against West, yet she provided no admissible summary judgment evidence to support her allegations. Grote provided no eyewitness testimony nor produced any witnesses with personnel knowledge of the beating. She provided no expert testimony to substantiate her theory that the bruising patterns were consistent with a fist and Taser. Summers and Capps affidavits stated that West told them he was beaten in jail. FED. R. EVID. 801(c) defines hearsay as a statement "other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Here, the affidavits contain West's out-of-court statement offered to prove the truth of the statement– that he was beaten. The statement is clearly inadmissable hearsay meeting no exceptions. The statement may not be used to support or defeat a motion for summary judgement. *Broadway v. City of Montgomery*, 530 F.2d 657, 661 (5th Cir. 1976)("hearsay evidence inadmissible at trial cannot be used to create a genuine issue of material fact to avoid summary judgment"). In sum, Grote's allegations are conclusory, speculative, and unsubstantiated. She provided no competent evidence that could be considered for summary judgment.

At approximately 11:46 a.m. on June 1, 2008, West charged the door of his cell in an attempt to escape. The escape video showed an officer opening West's cell door. Immediately West charged the door. The officer pushed back on the door, attempting to close it, to prevent West from escaping. West was able to push the door open far enough to place his right arm outside the door. He used his arm and body to block the door from closing. The officer grabbed West's right arm pushing it back to prevent West from holding and pushing the door open farther. However, the officer's attempt was unsuccessful. West broke free. Another officer came to assist. Both officers attempted to control

West and attempted to place handcuffs him. West continued to resist the officers. Two more officers came to assist. One officer held West's legs to prevent West from kicking. One seemed to be holding West in a headlock. The other two officers tried to place handcuffs on West. West continued to be uncooperative and resistant. When West was finally handcuffed and lying calmly on the floor, the officers did not exert further force. West was then helped up to his feet by two officers and placed in a "restraint chair." His feet were strapped to the chair. The officers uncuffed his arms and strapped them to the chair. He was placed in his cell at approximately 11:54 a.m. The video showed no beating, no punching, and no use of a Taser or any other weapon on West. The video showed that reasonable force was used against West solely for the purpose of preventing his escape and to neutralize the threat West posed to himself and the officers. The force was applied in good-faith and was not done maliciously and sadistically for the purpose of causing West harm. All the *Hudson* factors weigh against Grote. Accordingly, her claim of excessive force fails.

### 3. Basic Human Needs

The Constitution does not require that prisoners be provided with every amenity, but inmates must be furnished with the basic necessities of life, which includes reasonably adequate food, clothing, shelter, sanitation, medical care, and personal safety. *Newman v. Alabama*, 559 F.2d 283, 286 (5th Cir. 1977). However, as the Supreme Court emphasized in *Wilson v. Seiter*, 501 U.S. 294, 298 (1991), the Constitution does not mandate comfortable prisons and only deprivations denying "the minimal civilized measure of life's necessities" form the basis of an Eighth Amendment violation. *See also Hernandez v. Velasquez*, 522 F.3d 556, 560 (5th Cir. 2008) (per curiam) ("[i]t is well settled that 'the Constitution does not mandate comfortable prisons,' and that prison conditions may be 'restrictive and even harsh' without running afoul of the Eighth Amendment," (citation

omitted).

Grote complains that West was "denied food, water, and the ability to use the restroom causing him to urinate and defecate on himself." Yet, Grote provided no evidence as to how she has personal knowledge of the facts that West was deprived of these necessities. Furthermore, she provided no eyewitnesses nor admissible testimony to substantiate this claim. Grote attached Kim Summer's affidavit testifying that "West also told me that while he was strapped to the chair, they would not let him use the restroom and he was forced to urinate and defecate on himself." Once again, the affidavit contain West's out-of-court statement offered to prove the truth of the statement, that West was strapped to a chair and was not allow to use the restroom. The statement is clearly inadmissable hearsay meeting no exceptions. Thus, the statement may not be use to support or defeat a motion for summary judgement. *Broadway v. City of Montgomery*, 530 F.2d 657, 661 (5th Cir. 1976). Moreover, the evidence showed that West was given food and water. Meals were passed out at least twice a day to inmates, and West was seen "chow[ing]" on the May 31, 2008 jail log. In addition, Nurse Kay informed the officers "to give [West] water frequently." She also gave West a Powerade from the kitchen. West "drank all 24 oz." Thus, without more, Grote's unsupported allegations, "asserting ultimate or conclusory facts and conclusions of law are not sufficient to defeat a motion for summary judgment." *Duffy v. Leading Edge Products, Inc*., 44 F.3d 308, 312 (5th Cir. 1995). Accordingly, Grote's claims against the County for depriving West of his basic human needs fail.

**4. Harassment**

According to Grote's Amended Pleadings, she claims that Angelina County officials "harassed" West after his release from the hospital on June 9, 2008. She stated that the officials

threatened to arrest West without good cause, drove past his house, and followed cars in which he was a passenger. Grote attached the affidavit of Kevin Capps testifying that he has personal knowledge of the harassment. Capp stated that he was driving his vehicle with his wife, his son, and West in the car on a Sunday morning in April of 2008. They stopped at a gas station in Diboll, Texas to purchase gas when they were approached by four police officers. The officers were "questioning [West] about whether there was alcohol or other narcotic in the vehicle." Capp further testified that "no one in my vehicle had been behaving in any way that would draw suspicion or cause injury by the local police. They were apparently there because they saw West in my vehicle." He stated that the "tone of the incident was invasive and the police officers were verbally aggressive to both me and West." He concluded that "the only possible reason the police officers would have had for their behavior is the special interest they had in harassing West." Likewise, Kim Summer's affidavit stated that she and West were married from 2001 through 2006[2]. When she was living with him, the "local police would drive slowly by our house, go down a few hundred feet and turn around and drive slowly back by our house."

Grote's allegations of harassment are not cognizable under § 1983. It is well established that claims of "mere threatening language or gestures of a [state official] do not, even if true, amount to constitutional violations." *Robertson v. Plano City*, 70 F.3d 21, 24 (5th Cir. 1995)(citing *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983)). "Claims of hurt feelings, humiliation, and other heartfelt, yet objectively trivial indignities, are not of Constitutional moment ...." *Jackson v. Liberty County*, 860 F. Supp. 360, 363 (E.D. Tex. 1994). Accordingly, Grote fails to state a violation of a

---

[2]This Court noted the discrepancy in Grote's pleading and summary judgment evidence. Grote's pleadings stated West was harassed after his release from the hospital in June 9, 2008. The affidavits of Capps and Summers seem to indicate the harassment happened before his incarceration.

constitutional right.  Her alleged harassment claims against the County must be dismissed.

## 5.  Policy and Custom

Because Grote fails to show a constitutional violation, addressing whether  the County had a policy or custom that caused West injury would be unnecessary.  But assuming a constitutional violation existed, Grote fails to establish municipal liability against the County.

Grote points to the fact that the County does not have a medical staff on duty during the weekend and that the County staff did not and could not fill West's prescription.  Grote suggests that the County has a policy of ignoring inmates' medical needs.  Grote alleges that the County's supervisory personnel deprived West of his Constitutional rights.  Grote further alleges that the discriminatory actions of the County's employees, and of the supervisory personnel in "ignoring the employees' action clearly demonstrated an ingrained custom or usage of physically, emotional and psychologically abusing and humiliating inmates."  Assuming the truth of the facts, Grote may be able to show, at most, that the County staff was negligent in not calling Nurse Kay to get West's prescription filled even though she was on call, not providing West with more food and water, and not being more attentive to West.  However, such evidence is insufficient to show that the County endorses a policy of deliberate indifference toward inmates or that it has an ingrained custom of abuse.

Grote identified no official policy, custom, or practice of the County, promulgated by the municipal policymaker that was the moving force behind West's constitutional rights nor did she provide any evidence of inadequate supervision.  Rather, Grote's summary judgment evidence is replete with inadmissable hearsay and unsubstantiated allegations.  Taken together, they express no single municipal policy or custom but only a series of adversarial conclusions and unsubstantiated

allegations against the County.  Thus, absent these essential elements, Grote's claims against the County under § 1983 warrant dismissal.

## B.  Punitive Damages

Grote seeks awards of "exemplary and punitive damages in the amount of $2,500,000." Yet, she provided no supporting arguments in her Response regarding the recovery of punitive damages. Regardless, the Supreme Count and Fifth Circuit precedent have erected an impenetrable barrier to punitive damage claims against a municipality under § 1983.  *Newport v. Fact Concerts, Inc.* 453 U.S. 247, 266-67 (1981).  Justice Blackmun, for the majority, noted that "punitive damages imposed on a municipality are in effect a windfall to a fully compensated plaintiff, and are likely accompanied by an increase in taxes or a reduction of public services for the citizens footing the bill.  Neither reason nor justice suggests that such retribution should be visited upon the shoulders of blameless or unknowing taxpayers."  *Id* at 267.  Thus, precedent and sound public policy necessitate that Grote's claims for punitive damages against the County be dismissed.

*Conclusion*

Based on the foregoing analysis, the Court **GRANTS** Defendant Angelina County's Motion for Summary Judgment (doc. #45).  Plaintiff's claims against Angelina County are hereby **DISMISSED** with prejudice.  Any motion not previously ruled on is **DENIED**.

So **ORDERED** and **SIGNED** this **22** day of **March, 2011.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE